UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THE ESTATE OF ALBERT PARREÑO, by and
through JAVIER GARCIA-BENGOCHEA as
Administrator,

    Plaintiff,

v.     Case No.

AIRBNB INC.,

    Defendant.
_____/

## COMPLAINT

The Estate of Albert Parreño, by and through Javier Garcia-Bengochea as Administrator ("the Plaintiff Estate"), hereby sues Airbnb, Inc. ("Airbnb" or "Defendant") for violations of the Helms-Burton Act, and alleges as follows:

## INTRODUCTION

1. In 1959, Fidel Castro seized control of the Cuban government and initiated a decades-long dictatorship which "trampled on the fundamental rights of the Cuban people." 22 U.S.C. § 6081(3).

2. Castro's many crimes against the Cuban people included his "wrongful confiscation" of all private property in Cuba, a despicable act which deprived "millions of his own citizens" and "thousands of United States nationals" of their

property without compensation. *Id.* After confiscating this property, the Castro regime sought to unjustly profit off these takings by "offering foreign investors the opportunity to purchase an equity interest in, manage, or enter into joint ventures using property and assets some of which were confiscated from United States nationals." § 6081(5).

3. "To deter trafficking in wrongfully confiscated property," Congress determined in 1996 that "United States nationals who were the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures." § 6081(11). This determination led to the enactment of the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. §§ 6021 *et seq.*, also known as the LIBERTAD Act or the Helms-Burton Act, which created a private cause of action for United States nationals against those who knowingly trafficked in property stolen from them by the Castro regime.

4. Airbnb is one such trafficker. From at least August 2019 until at least May 2022, Airbnb knowingly and intentionally trafficked in real estate confiscated by the Castro regime from Albert Parreño ("Parreño"), a United States citizen, on October 14, 1960.

5. Parreño's estate now seeks compensation for Airbnb's wrongful trafficking of his stolen property.

## JURISDICTION, VENUE, AND PARTIES

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under 22 U.S.C. § 6021 *et seq.*, the Helms-Burton Act. The amount in controversy exceeds $50,000, excluding interest, costs, attorney's fees, and treble damages.

7. The Plaintiff Estate is a legal entity organized under the laws of the State of New York and is principally located in the State of New York.

8. Dr. Javier Garcia-Bengochea resides in Jacksonville, Florida and is a citizen thereof.

9. Dr. Garcia-Bengochea was appointed Administrator C.T.A. of the Plaintiff Estate on December 20, 2022, by the Surrogate's Court of the County of New York.

10. Defendant Airbnb, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

11. This Court has personal jurisdiction over Airbnb because the cause of action herein alleged arises out of Airbnb's operating or engaging in a business or business venture within the State of Florida and/or committing a tortious act in Florida. Airbnb operates a fully interactive travel and rental website and app accessible in Florida which Florida residents have both accessed and used in Florida to book accommodations at the Plaintiff Estate's confiscated Cuba property. Airbnb

has also received advertising revenues and web traffic from Florida residents driven by or relating to Airbnb's listing of the Plaintiff Estate's confiscated property on its online platforms.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(d) because Airbnb operates a fully interactive travel and rental website and app accessible in the Middle District of Florida which residents of Florida have both accessed and used to book accommodations at the Plaintiff Estate's confiscated property. Airbnb has also received advertising revenues and web traffic from residents of Florida driven by or relating to Airbnb's listing of the Plaintiff Estate's confiscated property on its online platforms.

## **ALBERT PARREÑO AND THE PROPERTY**

13. Albert Parreño was born in Santiago de Cuba on September 30, 1920. He resided in the United States almost continuously since 1933 and became a United States citizen in 1943 after joining the U.S. Army. He later lived and practiced law in New York City, New York.

14. Parreño owned a variety of properties in Cuba before 1959, including real estate and stock in Cuban companies.

15. One property Parreño owned was a one-third interest in a house and lot in Marianao, Havana located at the address now known as 1212 33rd Avenue, Havana, Cuba ("the Property").

16. On October 14, 1960, the Cuban government wrongfully confiscated the Property without any compensation to Parreño.

17. In 1964, to preserve any claims of loss for an eventual negotiation with Cuba, Congress authorized the Foreign Claims Settlement Commission ("the Settlement Commission") to provide for the determination of the amount and validity of claims regarding Cuban property confiscated by Castro. *See* 22 U.S.C. §§ 1643–1643m.

18. Parreño accordingly submitted a claim regarding the Property to the Settlement Commission for determination.

19. On September 6, 1970, the Settlement Commission certified Claim No. CU-1231 in Parreño's name ("the Claim").

20. A true and correct copy of the Claim is attached as Exhibit A.

21. The Claim encompassed Parreño's interest in the Property, i.e., his one-third interest in the "house and lot in Marianao, Havana." (Ex. A at 8–9).

22. The total value of the Claim in 1970 was $547,365.24 with interest at 6% per annum from the respective dates of loss for each property confiscated by the Cuban government. (Ex. A at 9–11).

23. Parreño died unexpectedly in 1972.

24. Upon his death, legal ownership of the Claim passed to the Plaintiff Estate.

25. Parreño's will provided that his rights to any property "held by me which has been confiscated by the Fidel Castro regime in Cuba, including but not limited to … my interest in real estate located in Cuba" would pass to his brother, Desiderio Parreño ("Desiderio").

26. However, Desiderio was a Cuban citizen and national his entire life, including when Parreño died in 1972. Accordingly, the Plaintiff Estate was barred from transferring legal ownership of the Claim to Desiderio without a license from the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC").

27. Moreover, Cuba also retains an interest in all certified claims against it. Accordingly, the Claim constitutes "blocked property," and the Plaintiff Estate was barred from transferring legal ownership of the Claim to Desiderio or anyone else without a license from OFAC.

28. OFAC never licensed the Plaintiff Estate to transfer legal ownership of the Claim to Desiderio; nor did the Plaintiff Estate ever seek a license to transfer legal ownership of the Claim out of the Estate.

29. Therefore, under the Cuban Asset Control Regulations, the Plaintiff Estate could not and did not transfer or distribute legal ownership of the Claim to Desiderio or anyone else, and the Claim remains an unadministered asset of the Plaintiff Estate.

## AIRBNB AND THE PROPERTY

30. Airbnb operates a popular global online marketplace that facilitates residential rentals between owners ("hosts") and renters ("guests") through online platforms such as Airbnb.com and the Airbnb app ("the Airbnb platforms").

31. Hosts create an account on one of the Airbnb platforms to offer their property for rent, and guests rent the property via the Airbnb platforms. Guests also pay Airbnb via the Airbnb platforms, after which Airbnb deducts service charges and fees and then pays the hosts.

32. Airbnb requires that hosts follow certain rules regarding, for example, cleanliness and being responsive to guests.

33. Airbnb can suspend or remove listings and terminate a host's account if laws or its terms of service have been violated or if termination is necessary to protect Airbnb.

34. Since at least 2015, Airbnb has listed rental properties in Cuba.

35. The vast majority of Airbnb's guests in Cuba come from the United States, including Florida.

36. For example, Florida accounted for at least approximately 4,000 of Airbnb's guests in Havana, Cuba, in 2019.

37. As part of its efforts to provide lodging for guests in Havana, Cuba, Airbnb continuously listed the Property for rent on its website and app from at least

August 2019 until at least May 21, 2022. Upon information and belief, guests (including guests from Florida) accessed Airbnb's listing of the Property and rented the Property via the Airbnb platforms throughout this time period. In this manner, Airbnb improperly trafficked the Property in the United States and Florida.

38. Airbnb never requested or received permission from the Plaintiff Estate to list or book the Property for rent on the Airbnb platforms.

39. Due to Airbnb's wrongful trafficking of the Property, counsel sent a certified letter ("the Letter") to Airbnb CEO Brian Chesky on August 20, 2019, informing Airbnb that it was trafficking in the Property.

40. The Letter specifically identified the Property as "1212 33rd Avenue, Havana, Cuba."

41. The Letter explained, in part, that the Property had been taken without compensation by the Cuban government in 1960, and that the Claim including the Property had been certified by the Settlement Commission.

42. The Letter also explained that Airbnb had engaged in trafficking of the property as identified in the Helms-Burton Act, and attached copies of the relevant statutes. The Letter provided notice regarding intention to commence an action under the Helms-Burton Act and a demand that the unlawful trafficking cease immediately.

43. Though receipt was confirmed, Airbnb never responded to the Letter and continued to list and book the Property until at least May 21, 2022.

44. Airbnb continued to list and book the Property despite having actual, direct, and express knowledge of the exact property at issue, the confiscation of the Property by the Castro regime, the Property's certification by the Settlement Commission, and the prohibition on trafficking in the Property by the Helms-Burton Act.

45. Besides Airbnb's actual knowledge, Airbnb also had constructive knowledge of the Claim because the Claim has been a matter of public record since its issuance on September 16, 1970, and has been publicly available on the Settlement Commission's website since February 2015.

46. Around the same time as its receipt of the Letter, Airbnb and/or its wholly owned subsidiary Airbnb Payments, Inc., conducted an internal audit regarding its compliance with OFAC requirements for conducting business in Cuba from 2015 through March 2020.

47. On January 3, 2022, OFAC announced a settlement with Airbnb Payments, Inc., for its violations of OFAC regulations, including processing thousands of payments related to Airbnb customers' travel to Cuba for reasons outside of the limited permitted travel-related transactions, and failing to maintain records.

48. Significantly, OFAC asserted that the violations occurred because:

9

      i. Airbnb Inc. conducted business in Cuba without "fully addressing the complexities of operating a Cuba-related sanctions compliance program for internet-based travel services," and

      ii. "the scaling up of [Airbnb Inc.'s] services in Cuba appears to have outpaced the company's ability to manage the associated sanctions risks via its technology platforms."

49. OFAC found as an aggravating factor that "Airbnb Payments is a large and sophisticated U.S.-based technology company."

50. At the same time Airbnb knew it had failed to comply with OFAC regulations, Airbnb continued to traffic in the Property despite notice of its violation.

## COUNT I
### Violation of 22 U.S.C. § 6082(a)(1)

51. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 50 as though fully set forth herein, and further alleges:

52. Airbnb is a person within the meaning of the Helms-Burton Act, 22 U.S.C. § 6023(11), because it is a corporation incorporated under the laws of the State of Delaware.

53. The Plaintiff Estate is a U.S. national within the meaning of the Helms-Burton Act, 22 U.S.C. § 6023(15)(B), because it is a legal entity organized under the laws of the State of New York and is principally located in the State of New York.

54. The Property was confiscated by the Cuban Government on October 14, 1960.

55. The Plaintiff Estate owns the Claim because it is an unadministered asset of Albert Parreño.

56. Airbnb knowingly, voluntarily, intentionally, and continuously trafficked in the Property from at least August 2019 until at least May 21, 2022, including after Airbnb's receipt of the Letter, by, among other actions:

    i. Listing the Property for rent on the Airbnb platforms.

    ii. Renting the Property to Airbnb's guests via the Airbnb platforms.

    iii. Managing the Property by setting and enforcing policies for the use of the Property.

    iv. Regularly engaging in commercial activity involving the listing, leasing, managing, use, possession, and rent of the Property.

    v. Causing, directing, and encouraging Airbnb's guests and hosts to lease, manage, use, possess, and engage in commercial activity and tourism regarding the Property.

    vi. Profiting off Airbnb's guests and hosts leasing, managing, using, possessing, and engaging in commercial activity and tourism involving the Property.

      vii. Receiving advertising revenue and web traffic to the Airbnb platforms due in part to Airbnb's use of the Property.

57. Airbnb had actual knowledge that the Property was subject to the Claim since at least its receipt of the Letter on August 20, 2019.

58. Airbnb had constructive knowledge that the Property was subject to the Claim since at least September 16, 1970, the date the Claim became part of the public record.

59. Airbnb also had constructive knowledge that the Property was subject to the Claim since the Claim became widely available online in February 2015.

WHEREFORE, Plaintiff demands a trial by jury for all issues to be tried herein and judgment against Defendant for damages (including but not limited to the full value of the Claim), interest, attorney's fees and costs, treble damages, and such other relief as this Court deems just and proper.

Dated: March 4, 2024.

                              **BISHOP PAGE & MILLS PLLC**

                By:   */s/ Thomas E. Bishop*
                      Thomas E. Bishop
                      Florida Bar Number 956236
                      Frederick D. Page
                      Florida Bar Number 968587
                      Katharine Roth
                      Florida Bar Number 106692
                      Kyle William Mason
                      Florida Bar Number 1045149
                      510 N. Julia Street

Jacksonville, FL 32202
(904) 598-0034 / (904) 598-0395 (fax)
*fpage@bishoppagemills.com*
*tbishop@bishoppagemills.com*
*kroth@bishoppagemills.com*
*kmason@bishoppagemills.com*
*apoole@bishoppagemills.com*
*service@bishoppagemills.com*

*Attorneys for Plaintiff*

13