# Exhibit A

FOREIGN CLAIMS SETTLEMENT COMMISSION
OF THE UNITED STATES
WASHINGTON, D.C. 20579

IN THE MATTER OF THE CLAIM OF

ALBERT J. PARRENO

Under the International Claims Settlement
Act of 1949, as amended

Claim No. CU-1231

Decision No. CU 5853

## PROPOSED DECISION

This claim against the Government of Cuba, under Title V of the International Claims Settlement Act of 1949, as amended, in the amended amount of $636,024.75, was presented by ALBERT J. PARRENO, based upon the asserted loss of certain real and personal property in Cuba. Claimant has been a national of the United States since June 19, 1943.

Under Title V of the International Claims Settlement Act of 1949 [78 Stat. 1110 (1964), 22 U.S.C. §§1643-1643k (1964), as amended, 79 Stat. 988 (1965)], the Commission is given jurisdiction over claims of nationals of the United States against the Government of Cuba. Section 503(a) of the Act provides that the Commission shall receive and determine in accordance with applicable substantive law, including international law, the amount and validity of claims by nationals of the United States against the Government of Cuba arising since January 1, 1959 for

> losses resulting from the nationalization, expropriation, intervention or other taking of, or special measures directed against, property including any rights or interests therein owned wholly or partially, directly or indirectly at the time by nationals of the United States.

Section 502(3) of the Act provides:

> The term 'property' means any property, right, or interest including any leasehold interest, and debts owed by the Government of Cuba or by enterprises which have been nationalized, expropriated,

intervened, or taken by the Government of Cuba and debts which are a charge on property which has been nationalized, expropriated, intervened, or taken by the Government of Cuba.

Claimant asserts the following losses:

| | |
|---|---:|
| 1,300 shares of stock in La Maritima, S.A., a Cuban corporation | $351,260.00 |
| 1,875 shares of stock in Molinera Oriental, S.A., a Cuban corporation | 75,000.00 |
| 26 shares of 6% preferred stock in Consolidated Railroads of Cuba Corporation, a Cuban corporation | 2,496.00 |
| Unimproved real property in Cuabitas, Oriente Province | 100,000.00 |
| 1/3 interest in house and lot in Marianao, Havana | 70,000.00 |
| Dividends due from La Maritima, S.A. | 25,662.00 |
| Salary due from La Maritima, S.A. | 5,250.00 |
| Dividends due from Molinera Oriental, S.A. | 6,356.75 |
| Total | $636,024.75 |

The record includes the following evidence: Claimant's affidavit of January 16, 1961 submitted to the Department of State; claimant's affidavits and statements submitted to the Commission in this proceeding; stock certificates for some of the shares in question; a submitted copy of claimant's Form TFR-500 "Census of Property in Foreign Countries", a report made in 1943 to the Treasury Department concerning his properties in Cuba.

Additionally, the evidence includes affidavits from individuals with personal knowledge of the facts discussed therein as well as reports received by the Commission from abroad.

Further, there are of record copies of contemporary correspondence evidencing the receipt of dividends by claimant on the stock claimed herein; copies of balance sheets and profit and loss statements for two of the Cuban corporations involved herein; and copies of claimant's tax returns evidencing the allowance of deductions for his Cuban losses.

On the basis of the entire record, the Commission finds that claimant owned certain items of real and personal property in Cuba, discussed in detail below.

CU-1231

## La Maritima, S.A.

The Commission finds that claimant owned 1,300 shares of stock in La Maritima, S.A., a Cuban corporation which owned and operated docks and warehouses in Santiago de Cuba, Oriente Province, Cuba.

On October 13, 1960, the Cuban Government published in its Official Gazette Law 890, which listed as nationalized La Maritima, S.A.

Since La Maritima, S.A. was organized under the laws of Cuba, it does not qualify as a corporate "national of the United States" defined under Section 502(1)(B) of the Act as a corporation or other legal entity organized under the laws of the United States, or any State, the District of Columbia, or the Commonwealth of Puerto Rico, whose ownership is vested to the extent of 50 per centum or more in natural persons who are citizens of the United States. In this type of situation, it has been held that an American stockholder is entitled to file a claim for the value of his ownership interest. (See Claim of Parke, Davis & Company, Claim No. CU-0180, 1967 FCSC Ann. Rep. 33.)

The Act provides in Section 503(a) that in making determinations with respect to the validity and amount of claims and value of properties, rights, or interests taken, the Commission shall take into account the basis of valuation most appropriate to the property and equitable to the claimant, including but not limited to fair market value, book value, going concern value, or cost of replacement.

The question, in all cases, will be to determine the basis of valuation which, under the particular circumstances, is "most appropriate to the property and equitable to the claimant". The Commission has concluded that this phraseology does not differ from the international legal standard that would normally prevail in the evaluation of nationalized property. It is designed to strengthen that standard by giving specific bases of valuation that the Commission shall consider.

Claimant's TFR-500 report asserted ownership of 900 shares of stock of La Maritima, S.A. and a value of $90,000.00 based upon the par value of

CU-1231

$100.00 per share. He claimed a tax deduction of $130,000.00 on the basis of 1,300 shares of stock using par value. In his affidavit of January 16, 1961, claimant stated that said stock had a value of $325,000.00 based upon the earnings capacity of the corporation. A former controller of the Cuban corporation who supervised its books and records, set forth in his affidavit of August 11, 1969 the net earnings of the corporation for the years 1949 through 1959 based upon an examination of copies of the financial records of the corporation maintained by claimant. On this basis, claimant asserts a value of $351,260.00 for his stock interest in his affidavit of August 21, 1969.

According to claimant's computations, the corporation earned $540,448.56 for the five-year period 1953 through 1957, averaging $108,089.71 annually. Since there were 4,000 shares of outstanding capital stock of the Cuban corporation, claimant computed that each share had a value of $27.02 based on said annual earnings. Applying a factor of ten times earnings, claimant arrived at a value of $351,260.00 for his 1,300 shares, representing a 32.5% interest in the corporation.

Upon consideration of the entire record, the Commission finds that the valuation most appropriate in this case and equitable to the claimant is the amount resulting from capitalizing the average annual net earnings of the Cuban corporation at 10% to arrive at the going concern value of the corporation. For this purpose, the Commission concludes that the five-year period immediately prior to the date of loss should be employed. (See Claim of Garcia & Diaz, Inc., Claim No. CU-0940.)

The record shows that the net earnings of the Cuban corporation for that five-year period were as follows:

| | | |
|---|---|---|
| 1955 | | $ 95,102.54 |
| 1956 | | 88,510.67 |
| 1957 | | 101,471.51 |
| 1958 | | 58,533.43 |
| 1959 | | 64,512.05 |
| | Total | $408,130.20 |

The average annual net earnings of the Cuban corporation was, therefore, $81,626.04. Accordingly, the value of the Cuban corporation as a going concern on October 13, 1960, the date of loss, was $816,260.40.

Inasmuch as the value of the Cuban corporation as a going concern is based upon its earnings capacity, the Commission holds that the excess of liquid assets, such as cash and current accounts receivable, over current liabilities constitutes additional factors to be considered in determining the overall value of the Cuban corporation. (See Claim of Garcia & Diaz, Inc., Claim No. CU-0940.)

The evidence includes certified reports from the Cuban corporation as of October 13, 1960, which disclose that as of that date the bank accounts had an aggregate balance of $41,587.84 and that the cash on hand from payments made by debtors of the Cuban corporation amounted to $21,574.24. It appears, therefore, that the current accounts receivable were merely being changed in form. The latest available balance sheet, as of August 31, 1960, shows current accounts receivable in the aggregate amount of $66,855.29. Accordingly, the liquid assets of the Cuban corporation amounted to $108,443.13. Since the current accounts payable as shown by that latest balance sheet were $33,780.69, the excess of the liquid assets over the current liabilities was $74,662.44.

The Commission therefore finds that the overall value of the Cuban corporation on October 13, 1960, the date of loss, was $890,922.84, and concludes that claimant's loss was $289,549.92 based on his 32.5% stock interest therein.

## Molinera Oriental, S.A.

The Commission finds that claimant owned 375 shares of stock in Molinera Oriental, S.A., a Cuban corporation which operated a flour mill in Santiago de Cuba, Oriente Province, Cuba. The Commission further finds that this corporation was also listed as nationalized pursuant to Law 890 in the Cuban Government's Official Gazette of October 13, 1960.

Claimant claims the loss of 1,875 shares of stock in Molinera Oriental, S.A., asserting that in 1960 his 375 shares with a par value of $100.00 per share were split at the rate of 5 to 1 so that he owned 1,875 shares with a

CU-1231

par value of $20.00 per share. His statement is supported by the affidavit of August 4, 1969 from the former President of the Cuban corporation. That officer states that in 1960 the capitalization of the corporation was increased from $900,000.00 to $1,700,000.00, each new share having a par value of $20.00. It appears, however, that the only available balance sheet for the Cuban corporation is dated as of December 31, 1959, prior to the change in capitalization. In any event, it is clear that claimant's stock interest in the corporation was not affected by that change. It is also noted that in claimant's tax returns he claimed a deduction of $38,250.00 based upon his cost of 375 shares of stock.

Claimant asserts a loss of $75,000.00 for his stock interest in Molinera Oriental, S.A. based on his opinion that the stock was worth about twice its par value. His assertion is not supported by any other documentary evidence of record. It appears from the former President's affidavit that the Cuban corporation was organized in 1956, and that the flour mill was constructed and operating before January 1, 1959.

Based upon the entire record, the Commission finds that the valuation most appropriate in this case and equitable to the claimant is that shown by the Cuban corporation's balance sheet as of December 31, 1959.

That balance sheet shows current assets, including deposits of $97,685.36, aggregating $592,692.93. In addition to certain mortgage bonds and other Cuban securities aggregating $13,000.00, the assets included fixed assets in the net amount of $1,977,109.78 after depreciation, and organization expense in the amount of $147,948.30. The profit and loss statement for the year ending December 31, 1959 shows a profit of $299,234.77. Inasmuch as the corporation had been functioning for only a short period of time, it was unable to fully amortize its organization expense. The fact that it was earning substantial profits is a sufficient basis for holding that the organization expense had enhanced the value of the corporation's operations and therefore constituted a valuable asset of the Cuban corporation. Since the liabilities of the corporation are shown in the balance sheet as $1,607,361.06,

CU-1231

the Commission finds that the value of the Cuban corporation or the excess of its assets over its liabilities on October 13, 1960, the date of loss, was $1,123,389.95. Inasmuch as there were 9,000 shares of outstanding capital stock shown in that balance sheet, the Commission finds that the value of one share of stock on the date of loss was $124.8211. Therefore, claimant's 375 shares of stock had a value of $46,807.91.

## Consolidated Railroads of Cuba

The Commission finds that claimant owned 26 shares of 6% Cumulative Preferred stock of the Consolidated Railroads of Cuba, a Cuban corporation. The Commission has found that this Cuban corporation was nationalized by the Government of Cuba on October 13, 1960, and that each share of such stock had a value of $272.00 on the date of loss, representing $100.00 in par value and $172.00 in accrued and unpaid dividends. (See Claim of Cora W. Welsh, et al, Claim No. CU-2503.)

Accordingly, the Commission finds that claimant's 26 shares of stock had a value of $7,072.00 on October 13, 1960.

## Unimproved Real Property

The Commission finds that claimant owned certain unimproved real property in Cuabitas, Oriente Province, Cuba.

On December 6, 1961, the Cuban Government published in its Official Gazette its Law 989, which effected the confiscation of all assets, personal property and other rights of persons who had left the country. The Commission finds that this law applied to claimant. In the absence of evidence to the contrary, the Commission finds that claimant's land in Cuabitas was taken by the Government of Cuba on December 6, 1961 pursuant to Law 989. (See Claim of Wallace Tabor and Catherine Tabor, Claim No. CU-0109, 25 FCSC Semiann. Rep. 53 [July-Dec. 1966].)

Claimant asserts that the land in Cuabitas had a "minimum valuation of $100,000.00." He points to an affidavit, dated October 7, 1969, from Andres J. Duany who states that he is familiar with the property; that he was engaged in developing land in Cuba; and that in his opinion claimant's land,

measuring 45,734 square meters, "could expect to sell . . . for an amount in the neighborhood of $200,000.00."

In claimant's affidavit of January 16, 1961, submitted to the Department of State, he stated that "An offer of $20,000.00 for the property was refused by the undersigned in 1957." However, in his letter to the Commission of February 16, 1970, claimant stated that the $20,000 "was the value arbitrarily established by me in my January 16, 1961 affidavit based upon a bona fide offer made to me early in 1957 and refused by me as not a fair price." A report from abroad indicates that in 1959 the property had a value of $100,000.00.

Upon consideration of the entire record, the Commission finds that the land had a value of $100,000.00 on December 6, 1961, the date of loss.

### House and Lot

The Commission finds that claimant owned a 1/3 interest in a certain house and lot at Marianao, Havana, Cuba.

The Commission further finds that the property was within the purview of the Urban Reform Law, published in the Cuban Official Gazette on October 14, 1960. In the absence of evidence to the contrary, the Commission finds that the house and lot were taken by the Government of Cuba on October 14, 1960. (See Claim of Henry Lewis Slade, Claim No. CU-0183, 1967 FCSC Ann. Rep. 39.)

Claimant states that the value of said improved real property was $210,000.00, and claims $70,000.00 for his 1/3 share. He relies upon an affidavit, dated September 12, 1969, from Gloria Juarrero, who states that she lived in one of the apartments of the building in question; and that in her opinion the property had a value of over $210,000.00.

A report from abroad indicates that the improved real property was acquired by deed on July 19, 1941 and had a value of $10,000.00. In his TFR-500 report claimant stated that the cost of his 1/3 interest was $25,333.33 and that his interest therein had a value of $19,370.37 on May 31, 1943. Claimant's affidavit of January 16, 1961 recites a cost of $77,000.00 in 1939 for the entire piece of property, and an independent

appraisal of $200,000.00 in 1958 when a sale was considered, on which basis he stated that his loss was $66,666.66. His affidavit of August 21, 1969 states that his 1/3 interest in the property had a value of $85,000.00. Based on a total cost of $77,000.00 for the land and building, claimant asserted a tax deduction in the amount of $25,666.00 for his 1/3 interest.

The record indicates that the property consisted of a three-story building, containing 2 apartments on each floor, and situated on land measuring about 1,125 square meters in area. Each apartment had a vestibule, living room, dining room, 2 glass-enclosed porches, 3 bedrooms, 2 bathrooms, kitchen, servant's quarters and bathroom.

Upon consideration of the entire record, the Commission finds that the appraisal of the property in 1958 represents the most appropriate basis for evaluating the property. Accordingly, the Commission finds that the house and lot had a value of $200,000.00 on October 14, 1960, the date of loss. Therefore, claimant's 1/3 interest in the property had a value of $66,666.66.

### Dividends and Salary

The Commission has held that claims based on debts due from nationalized Cuban corporations are within the purview of Title V of the Act. (See Claim of Kramer, Marx, Greenlee and Backus, Claim No. CU-0105, 25 FCSC Semiann. Rep. 62 [July-Dec. 1966].)

Based upon the evidence of record, including affidavits from officers of La Maritima, S.A. and Molinera Oriental, S.A., who had personal knowledge of the facts, the Commission finds that these two Cuban corporations owed debts to claimant on October 13, 1960 as follows:

| | | |
|---|---|---|
| 1. | Dividends due from La Maritima, S.A. in the amounts of $15,600.00 less $936.00 due Cuba, and $11,700.00 less $702.00 due Cuba | $25,662.00 |
| 2. | Salary due from La Maritima, S.A. | 5,250.00 |
| 3. | Dividends due from Molinera Oriental, S.A. in the amount of $6,762.50 less $405.75 due Cuba | 6,356.75 |
| | Total | $37,268.75 |

CU-1231

- 10 -

## Recapitulation

Claimant's losses are summarized as follows:

| Item of Property | Date of Loss | Amount |
|---|---|---|
| Stock interest in La Maritima, S.A. | October 13, 1960 | $289,549.92 |
| Stock interest in Molinera Oriental, S.A. | October 13, 1960 | 46,807.91 |
| Stock interest in Consolidated Railroads of Cuba | October 13, 1960 | 7,072.00 |
| Unimproved real property | December 6, 1961 | 100,000.00 |
| House and lot (1/3 interest) | October 14, 1960 | 66,666.66 |
| Debts due from La Maritima, S.A. and Molinera Oriental, S.A. | October 13, 1960 | 37,268.75 |
| | Total | $547,365.24 |

The Commission has decided that in certifications of loss on claims determined pursuant to Title V of the International Claims Settlement Act of 1949, as amended, interest should be included at the rate of 6% per annum from the date of loss to the date of settlement (see Claim of Lisle Corporation, Claim No. CU-0644), and in the instant case it is so ordered as follows:

| FROM | ON |
|---|---|
| October 13, 1960 | $380,698.58 |
| October 14, 1960 | 66,666.66 |
| December 6, 1961 | 100,000.00 |
| Total | $547,365.24 |

CU-1231

## CERTIFICATION OF LOSS

The Commission certifies that ALBERT J. PARRENO suffered a loss, as a result of actions of the Government of Cuba, within the scope of Title V of the International Claims Settlement Act of 1949, as amended, in the amount of Five Hundred Forty-seven Thousand Three Hundred Sixty-five Dollars and Twenty-four Cents ($547,365.24) with interest at 6% per annum from the respective dates of loss to the date of settlement.

Dated at Washington, D. C.,
and entered as the Proposed
Decision of the Commission

SEP 16 1970

Lyle S. Garlock, Chairman

Theodore Jaffe, Commissioner

NOTICE TO TREASURY: The above-referenced securities may not have been submitted to the Commission or if submitted, may have been returned; accordingly, no payment should be made until claimant establishes retention of the securities or the loss here certified.

The statute <u>does not provide for the payment of claims</u> against the Government of Cuba. Provision is only made for the determination by the Commission of the validity and amounts of such claims. Section 501 of the statute specifically precludes any authorization for appropriations for payment of these claims. The Commission is required to certify its findings to the Secretary of State for possible use in future negotiations with the Government of Cuba.

NOTICE: Pursuant to the Regulations of the Commission, if no objections are filed within 15 days after service or receipt of notice of this Proposed Decision, the decision will be entered as the Final Decision of the Commission upon the expiration of 30 days after such service or receipt of notice, unless the Commission otherwise orders. (FCSC Reg., 45 C.F.R. 531.5(e) and (g), as amended, 32 Fed. Reg. 412-13 (1967).)

CU-1231